FILED-ED4
03 JAN 27 PM 4:15
CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TRANSPERSONNEL, INC., an Illinois )
corporation, )
                                     )
            Plaintiff, )
                                     ) **03 C 0611**
     v. ) No.
                                     )     JUDGE AMY ST. EVE
ROADWAY EXPRESS, INC., a Delaware )
Corporation, )
                                     ) MAGISTRATE JUDGE ASHMAN
           Defendant. )

DOCKETED JAN 28 2003

## COMPLAINT

Plaintiff, Transpersonnel, Inc., by its attorneys, states for its Complaint against Defendant, Roadway Express, Inc., as follows:

1. This action is brought pursuant to the Declaratory Judgments Act (28 U.S.C. § 2201) to resolve an actual controversy over whether (i) Roadway Express is an employer for purposes of the Multiemployer Pension Plan Amendments Act (29 U.S.C. §§ 1381-1453) ("MPPAA") and (ii) Roadway Express is obligated under its written agreement with Transpersonnel to reimburse Transpersonnel for any withdrawal liability assessed against Transpersonnel relating to the Local 705 International Brotherhood of Teamsters Pension Fund (the "Pension Fund").

2. Transpersonnel is an Illinois corporation with its principal place of business in Milwaukee, Wisconsin.

1-1

3. Roadway Express is a Delaware corporation with its principal place of business in Akron, Ohio. Roadway Express does business in, among other places, Cook County, Illinois.

4. Roadway Express' reimbursement obligation to Transpersonnel exceeds $75,000, exclusive of interest and costs.

5. A substantial part of the events giving rise to Transpersonnel's claim against Roadway Express arose in the Northern District of Illinois.

## JURISDICTION

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship).

7. This Court has personal jurisdiction over Roadway Express because Roadway Express does business within the Northern District of Illinois.

## VENUE

8. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(a), (b) and (c).

## ALLEGATIONS COMMON TO ALL COUNTS

9. On May 2, 1986, Transpersonnel entered into a written agreement with Roadway Express whereby, *inter alia*, Transpersonnel agreed to supply drivers to Roadway Express for Roadway Express to utilize in its common carriage operations (the "Agreement"). A copy of the Agreement, and Schedule "A" to the Agreement, is incorporated by reference herein and attached hereto as Exhibit 1.

10. Under paragraph 3 of the Agreement, Transpersonnel agreed to terminate its assignment of any driver to Roadway Express if Roadway Express determined that (a) the driver conducted himself in such a way as to result in an increased premium of any insurance policy or policies carried by Roadway Express, (b) the driver is not competent, (c) the driver is not or fails to be duly licensed, or (d) the driver's health is at any time less than required for the work involved.

11. Under paragraph 4 of the Agreement, Transpersonnel agreed to pay the leased drivers' wages and to provide for any benefits required by the applicable collective bargaining agreement between Transpersonnel and any authorized representative of any collective bargaining unit which may be in effect from time to time. Pursuant to the Agreement, Transpersonnel made contributions to the Pension Fund.

12. Under paragraph 9 of the Agreement, Roadway Express agreed to dispatch; direct the loading and unloading of vehicles; select the routes; and direct the drivers as to pick-ups, deliveries and other matters related to the day-to-day operation of the vehicles utilized by Roadway Express.

13. Under paragraph 10 of the Agreement, Roadway Express agreed to obtain and maintain reports, records and other data necessary to comply with the applicable regulations of the Interstate Commerce Commission and the Department of Transportation and of any other applicable federal or state agencies in connection with the operation of vehicles in Roadway Express' private carriage system. Roadway Express further agreed, under paragraph 10 of the Agreement, to assume

all responsibility to periodically check driver's logs and other required reports and records to assure compliance with all applicable federal and state governmental regulations.

14. Under paragraph 14 of the Agreement, Roadway Express promise to pay Transpersonnel for services provided under the Agreement in accordance with the schedule or amendments attached to the Agreement.

15. Paragraph (C) of Schedule "A" to the Agreement provides as follows:

> [Roadway Express] agrees to reimburse [Transpersonnel], at cost, for all applicable employee benefits, including health, welfare and pension fund contributions, and other similar items paid to or on behalf of [Transpersonnel's] employees as a result of a union agreement obligation, including benefits furnished, paid, or accruing of any statute, regulation or rule related to such agreement, benefit or payment. [Roadway Express] agrees that [Transpersonnel's] right to payment for the amounts specified survives any cancellation of the main agreement.

16. Transpersonnel performed all of its obligations under the Agreement.

17. In or about 1992, Roadway Express cancelled and terminated the Agreement.

18. In July 2002, the Pension Fund issued a Notice and Demand on Transpersonnel for withdrawal liability totaling of $441,000.00. The Pension Fund also has requested Transpersonnel to make interim payments on this liability.

19. Transpersonnel timely requested review of the Notice and Demand for withdrawal liability to the Pension Fund. The Pension Fund has not respond to Transpersonnel's request.

20. The Pension Fund has failed or refused to pursue Roadway Express or reassess Transpersonnel's withdrawal liability.

21. Transpersonnel has filed a demand for arbitration on the issue of the amount of its withdrawal liability.

## COUNT I

### ROADWAY EXPRESS IS AN EMPLOYER UNDER THE MPPAA

22. Transpersonnel realleges and incorporates by reference paragraphs 9 through 21 of the Allegations Common to All Counts as paragraph 22.

23. Transpersonnel contends that Roadway Express is an employer under the MPPAA.

24. In order to resolve this controversy, Transpersonnel requests that, pursuant to the Declaratory Judgments Act (28 U.S.C. § 2201), this Court declare the respective rights and duties of the parties in this matter, and, in particular, that the Court declare that Roadway Express is an employer for purposes of the MPPAA.

25. A valid and ripe case and controversy exists sufficient for this Court to declare the rights and remedies of the parties in that the Pension Fund has requested Transpersonnel to make interim payments and Transpersonnel presently is arbitrating the scope of its withdrawal liability to the Pension Fund and whether a portion of that liability should be reduced because Roadway Express also is an employer under the MPPAA.

WHEREFORE, Plaintiff, Transpersonnel, Inc., prays that the Court render a declaratory judgment providing that Defendant, Roadway Express, Inc., is an employer under the Multiemployer Pension Plan Amendments Act with respect to the employees it leased from Transpersonnel, Inc.; that Transpersonnel, Inc. be

awarded its costs in bringing and maintaining this action; and that Transpersonnel, Inc. be awarded such other and further relief as deemed by the Court to be just and proper.

## COUNT II

### ROADWAY EXPRESS IS CONTRACTUALLY OBLIGATED TO REIMBURSE TRANSPERSONNEL FOR ANY WITHDRAWAL LIABILITY

26. Transpersonnel realleges and incorporates by reference paragraphs 9 through 21 of the Allegations Common to All Counts as paragraph 26.

27. Transpersonnel contends that Roadway Express is contractually obligated to reimburse Transpersonnel with respect to any withdrawal liability assessed against it by the Pension Fund or as awarded in the underlying MPPAA arbitration.

28. In order to resolve this controversy, Transpersonnel requests that, pursuant to the Declaratory Judgments Act (28 U.S.C. § 2201), this Court declare the respective rights and duties of the parties in this matter, and, in particular, that the Court declare that Roadway Express is contractually obligated to reimburse Transpersonnel with respect to that portion of the withdrawal liability assessed against Transpersonnel by the Pension Fund that is attributable to the drivers provided to Roadway by Transpersonnel.

29. A valid and ripe case and controversy exists sufficient for this Court to declare the rights and remedies of the parties in that the Pension Fund has requested Transpersonnel to make interim payments and Transpersonnel presently is arbitrating the scope of its withdrawal liability to the Pension Fund and whether

a portion of that liability should be reduced because Roadway Express also is an employer under the MPPAA.

WHEREFORE, Plaintiff, Transpersonnel, Inc., prays that the Court render a declaratory judgment providing that Defendant, Roadway Express, Inc., is contractually obligated to reimburse Transpersonnel with respect to any withdrawal liability assessed against Transpersonnel by the Pension Fund that is attributable to the drivers provided to Roadway; that Transpersonnel, Inc. be awarded its costs in bringing and maintaining this action; and that Transpersonnel, Inc. be awarded such other and further relief as deemed by the Court to be just and proper.

TRANSPERSONNEL, INC.

By: *Phillip M. Schreiber*
One of Its Attorneys

Mark A. Spognardi
Phillip M. Schreiber
HOLLAND & KNIGHT LLC
500 West Madison St., 40th Floor
Chicago, Illinois 60661
(312) 715-5700

CH01 #1254975 v1

## A G R E E M E N T

THIS AGREEMENT made and entered into by and between Transpersonnel, Inc., its participating licensed affiliates, whose address is 5301 N. Ironwood Road, P.O. Box 2053, Milwaukee, WI 53201, hereinafter referred to as "Lessor" and <u>Roadway Express, Inc. whose address for purpose of this Agreement is 2000 Lincoln Highway, Chicago Heights, Illinois 60411</u> hereinafter referred to as "Lessee" on this __2nd__ day of __May__, 19__86__.

### WITNESSETH:

WHEREAS, Lessee, operates a common carriage system under a certificate of authority issued by the Interstate Commerce Commission; and

WHEREAS, Lessee, either owns or leases the vehicles used to implement this common carriage operation; and

WHEREAS, Lessor, is desirous of supplying drivers, who are employees of Lessor, to Lessee which it may utilize in furtherance of its common carriage operation;

<u>IT IS AGREED BY THE LESSOR:</u>

1. As needed by Lessee, Lessor will provide Lessee with competent experienced and duly licensed drivers who are legally qualified under all state and federal regulations to drive vehicles owned or leased by Lessee in intra and interstate commerce.

2. All such drivers supplied by Lessor will be bonded in the amount of $100,000 in conformity with Lessor's standard fidelity bond policy, which policy Lessor covenants shall remain in full force and effect throughout the life of the Agreement.

3. Lessor will terminate the assignment of any driver supplied by Lessor to Lessee if Lessee finds that (a) such driver(s) conducts himself in such a way as to result in an increased premium on any insurance policy or policies carried by Lessee, or (b) such driver(s) is not competent, or (c) such driver(s) is not or fails to continue to be duly licensed, or (d) such driver's health is at any time less than required for the work involved.

R-10/78

4. Lessor will pay the drivers' wages and provide any of the benefits required by any applicable bargaining agreement between Lessor and any authorized representative of any collective bargaining unit which may be in effect from time to time and will pay all applicable federal and state taxes with respect to the employment of such drivers including social security, federal and/or state unemployment compensation taxes. Lessor further will maintain payroll records and reports and carry workers' compensation insurance on all drivers and will comply with all applicable laws and regulations of all governmental agencies relative to the employment of such drivers.

5. Lessor has procured and will continue to maintain in full force and effect during the life of this Agreement liability insurance for bodily injury and property damage on an occurrence basis, covering its employees while such employees are (a) not actually engaged in the operation of Lessee's vehicles, or (b) driving such vehicles without Lessee's permission express or implied and not in furtherance of the work contemplated hereunder, whether such vehicles are owned or leased. Lessor represents and warrants to Lessee that the aforesaid insurance coverage has and will continue during the life of this Agreement to provide liability limits of at least $250,000 for bodily injury to any one person and $500,000 for bodily injury for any one occurrence and $100,000 property damage in any one occurrence. Upon request, Lessor will furnish certificate(s) of insurance evidencing its obligations as provided in this paragraph.

6. Lessor agrees to be responsible for the workers' compensation insurance on its employees. If any direct claim for workers' compensation benefits or awards is asserted against Lessee by any of said employees or, in the event of death, by their personal representative(s) then Lessor shall indemnify and hold Lessee harmless from and against such claim(s) to the extent of all benefits and awards, cost of litigation, disbursements and reasonable attorney's fees Lessee may incur in connection therewith. At Lessee's option, and upon written notice, Lessor will undertake to defend Lessee against such claim(s). Lessor covenants that it has a policy of workers' compensation insurance with a reputable insurance company, covering the aforesaid obligations. Upon request, Lessor will furnish certificate(s) of insurance evidencing its obligations as provided in this paragraph.

7. Lessor will assume no responsibility for the drivers' compliance with the Interstate Commerce Commission and/or Department of Transportation Hours of Service and other safety regulations or for any similar state regulations.

R-10/78

- 3 -

8. Lessee shall have the right, upon demand, at all times during regular business hours to examine and inspect Lessor's drivers' records.

**IT IS AGREED BY LESSEE:**

9. Lessee will dispatch, direct the loading and unloading of vehicles, select routes, direct the drivers as to pick-ups, deliveries and other matters related to the day-to-day operation of the vehicles utilized by Lessee.

10. Lessee will obtain and maintain reports, records and other data necessary to comply with the applicable regulations of the Interstate Commerce Commission and Department of Transportation and of such other applicable State and Federal agencies in connection with the operation of vehicles in Lessee's private carriage system, and Lessee shall further assume all responsibility to periodically check drivers' logs and other required reports and records to assure compliance with all applicable Federal and State governmental regulations. Lessor shall have the right to inspect the foregoing during Lessee's regular business hours and Lessee will make copies thereof available to Lessor upon request. Lessee agrees to indemnify and hold Lessor harmless for any loss or expense which Lessor may incur by reason of any non-compliance or violation of such regulations by Lessee.

11. Lessee will not hold Lessor responsible for loss or damage to the vehicles being operated by drivers furnished by Lessor or for loss or damage to any cargo carried by any said vehicles by reason of fire, collision, or other casualty, or by reason of theft, unless such theft is participated in directly or indirectly by Lessor's employee and unless Lessor is advised of such theft within seven (7) days of the discovery thereof by Lessee.

12. With respect to the vehicles used pursuant to this Agreement, Lessee will procure and maintain in full force and effect throughout the life of this Agreement an insurance policy with a reputable company, with the coverages and limits set forth hereafter naming as an additional insured Lessor and/or its officers and employees; the coverage to include bodily injury and property damage on an occurrence basis, comprehensive and collision or upset damage. The limit of liability for the bodily injury and property damage coverage shall be at least $500,000 for bodily injury for each person, $500,000 bodily injury for each occurrence, and $500,000 property damage for each occurrence. Upon request, Lessee will furnish certificate(s) of insurance evidencing its obligations as provided in this paragraph with certificate(s) shall provide for at least thirty (30) day's mail notice to Lessor of either cancellation or reduction in limits of Lessee's insurance coverage as set forth herein.

- 4 -

13. Lessee shall not hold Lessor responsible or liable for failure to provide drivers as requested if prevented by war, labor dispute, fires, acts of God, accidents or any other causes beyond the control of the Lessor.

14. Lessee will pay Lessor for services provided in accordance with the schedule or amendments thereto attached to this contract.

15. Lessee, in calculating the mileage for which Lessee is obligated to pay Lessor under the terms of this agreement, shall be governed by the distance of mileage shown on the Hubometer of the truck making such trips. Verification of each trip will be checked against mileages indicated on the current Mileage Guide published by the Household Good Carriers Bureau, Agent, and approved supplements thereof. Any discrepancies shall be reconciled by mutual agreement prior to payments of the invoices.

16. Lessee will pay to Lessor all charges provided herein within a reasonable period of time after being received by Lessee. Such payments shall be made at least twice monthly and shall cover all invoices prior to the date of payment.

17. Lessee will not make any request or demand upon Lessor, nor shall Lessor have the right, to make any contact, enter into any contract or arrangement, set up any type of coordinated or concerted operation, or otherwise engage in any activity with any third-party truck leasing firm, either as Lessee's agent or independently, it being expressly recognized that to do so may jeopardize the common carriage status of Lessee. In the event that Lessee leases vehicles to implement its common carriage operation, all such contacts, contracts, arrangements and activities shall be made and entered into directly by Lessee, without reference to Lessor in any way.

GENERAL PROVISIONS

18. Lessor will have sole control and responsibility for and will be sole signatory under and connected with all labor negotiations, grievances, collective bargaining agreements and related items concerning drivers furnished to Lessee under this Agreement. Lessee agrees not to violate the terms of any collective bargaining agreement which Lessor may sign with respect to the drivers hereunder. Lessee agrees to indemnify Lessor at Lessor's cost both direct and indirect without any service charge for any payments Lessor may make to drivers for services not actually performed as a result of any determination or settlement of a claim arising out of any collective bargaining agreement Lessor may have covering such drivers, or any action instituted by a governmental agency relative to such drivers.

R-10/78

19. This Agreement shall be the entire understanding and agreement between Lessor and Lessee with regard to the subject matter hereof, and any representations, covenants, terms and conditions not incorporated herein shall not be binding on either party. Specifically, should Lessee subsequently issue its standard Purchase Order in connection with this Agreement, any indemnification and/or insurance clause contained in the General Terms and Conditions of any such Purchase Order shall not apply to the performance of this Agreement. It is understood that this Agreement applies only to the Lessee's plant(s) located at the address indicated on schedule(s) attached hereto and made a part of this Agreement and shall not apply to or bind any other organizational components of Lessee or affect in any way any other organizational component. This Agreement shall supersede all prior understandings, agreements, contracts or arrangements between Lessee and Lessor. This Agreement may be amended or changed only by the execution of an endorsement or amendment hereto duly executed by both Lessor and Lessee.

20. The Agreement shall be binding upon the parties hereto, their successors, legal representative and assigns, but no assignments of this Agreement or any interest herein by either party shall be valid without the prior written consent of the other party, except that invoices rendered hereof by Lessor to Lessee may be assigned at Lessor's discretion to any legally licensed bank, trust company, savings or other lending institution.

21. The term of this Agreement shall be indefinite and shall run until cancelled by either party upon thirty (30) days written notice prior to the proposed effective date of termination. Such notice shall be deemed given when mailed by Certified Mail, postage prepaid, to the address appearing above in this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement each by an officer duly authorized, as of the date above set forth.

_Velma A. Weimer_
WITNESS

TRANSPERSONNEL, INC.
LESSOR
By: _____
G.L. Ricketts
Title: Vice President & Gen. Mgr.

_____
WITNESS

-OVER-

ROADWAY EXPRESS, INC.
LESSEE
By: _____
U.C. Jones
Title: Midwest Division Vice President

R-10/78

This contract applies to Roadway Express, Inc. locations within the jurisdiction of Teamsters Local Union 705 and Joint Council 25.

TRANSPERSONNEL, INC.                ROADWAY EXPRESS, INC.

_James A. Meyer_                    _[signature]_

SCHEDULE "A"

Date Of Agreement: *May 2, 1986*

Name of Lessee: Roadway Express, Inc.

Employees' Domicile Location: Chicago Heights, Illinois

Lessee will pay Lessor for services rendered as follows:

A) The amount of actual wages, including holiday and vacation pay, earned by Lessor's employees plus a service charge of $32.00 per week per employee.

B) The above payments shall be in addition to such payroll costs as Unemployment Compensation Taxes, Social Security Taxes, Worker's Compensation, Liability and Bonding Premium payments, all of which shall be billed at cost.

It is understood that if, during the effective term of this Agreement, Lessor is required to increase such payroll costs and/or wages as a result of the determination of any governmental authority or insurer, then Lessee will reimburse Lessor for such increases, at cost.

C) Lessee agrees to reimburse Lessor, at cost, for all applicable employee benefits, including health, welfare and pension fund contributions, and other similar items paid to or on behalf of Lessor's employees as a result of a union agreement obligation, including benefits furnished, paid, or accruing to or for the account of such employees as a result of any statute, regulation or rule related to such agreement, benefit or payment. Lessee agrees that Lessor's right to payment for the amounts specified survives any cancellation of the main agreement.

D) Lessee understands and recognizes that Lessor may, during the effective term of the Agreement, increase employees' wages as a result of a union agreement obligation. Such increase, if any, shall be billed by Lessor and paid by Lessee in accordance with Paragraph A above.

Signed for LESSOR by: TRANSPERSONNEL, INC.

*G.L. Ricketts*
Title: Vice President & Gen. Mgr.

Signed for LESSEE by: ROADWAY EXPRESS, INC.

*C. Jones*
Title: MIDWEST DIVISION VICE PRESIDENT

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as req by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for th of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Transpersonnel, Inc.

**DEFENDANTS**
Roadway Express, Inc.

DOCKETED
JAN 28 2003

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Illinois__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Delaware__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

03 C 0611

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Mark Spognardi, Holland & Knight, 500 W. Madison
312/715-5700

Phillip Schreiber, Holland & Knight, 500 W. Madison
312/715-5700

ATTORNEYS (IF KNOWN)
JUDGE AMY ST. EVE
MAGISTRATE JUDGE ASHMAN

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLA AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF |
|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

[checkbox list of nature of suit categories - none checked except 791 Empl. Ret. Inc. Security Act]

☒ 791 Empl. Ret. Inc. Security Act

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

ERISA/MPPAA - Declaration that defendant is an employer under MPPAA and required by contract to reimburse Plaintiff for certain withdrawal liability obligations

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23
DEMAND $ Declaratory relief
CHECK YES only if demanded in compla
JURY DEMAND: ☐ YES ☐ NO

**VIII.** This case ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE: January 27, 2003

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of
Transpersonnel, Inc., an Illinois Corporation
        Plaintiff,

v.

Roadway Express, Inc., a Delaware Corporation
        Defendant.

Case Number: 03 C 0611

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR

TRANSPERSONNEL, INC.

| (A) | (B) |
|---|---|
| SIGNATURE: [signed] | SIGNATURE: [signed] |
| NAME: Mark A. Spognardi | NAME: Phillip Schreiber |
| FIRM: Holland & Knight, LLC | FIRM: Holland & Knight, LLC |
| STREET ADDRESS: 500 W. Madison Street, 40th Floor | STREET ADDRESS: 500 W. Madison Street, 40th Floor |
| CITY/STATE/ZIP: Chicago, Illinois 60661 | CITY/STATE/ZIP: Chicago, Illinois 60661 |
| TELEPHONE NUMBER: 312/715-5700 | TELEPHONE NUMBER: 312/715-5784 |
| IDENTIFICATION NUMBER: 06188895 | IDENTIFICATION NUMBER: 06209973 |
| MEMBER OF TRIAL BAR? YES [X] NO [ ] | MEMBER OF TRIAL BAR? YES [ ] NO [X] |
| TRIAL ATTORNEY? YES [X] NO [ ] | TRIAL ATTORNEY? YES [ ] NO [X] |
| | DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [X] |

| (C) | (D) |
|---|---|
| SIGNATURE: | SIGNATURE: |
| NAME: | NAME: |
| FIRM: | FIRM: |
| STREET ADDRESS: | STREET ADDRESS: |
| CITY/STATE/ZIP: | CITY/STATE/ZIP: |
| TELEPHONE NUMBER: | TELEPHONE NUMBER: |
| IDENTIFICATION NUMBER: | IDENTIFICATION NUMBER: |
| MEMBER OF TRIAL BAR? YES [ ] NO [ ] | MEMBER OF TRIAL BAR? YES [ ] NO [ ] |
| TRIAL ATTORNEY? YES [ ] NO [ ] | TRIAL ATTORNEY? YES [ ] NO [ ] |
| DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] | DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] |

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.

DOCKETED JAN 28 2003

FILED-ED 03 JAN 27 PM 4:19