FILED
JAN 15 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED
JAN 16 2004

TRANSPERSONNEL, INC., an Illinois corporation,

Plaintiff,

v.

ROADWAY EXPRESS, INC., a Delaware corporation,

Defendant.

No. 03 C 00611

Judge Amy St. Eve

**OPPOSITION OF DEFENDANT, ROADWAY EXPRESS, INC., TO PLAINTIFF TRANSPERSONNEL, INC.'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Roadway Express, Inc. ("Roadway"), by counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, respectfully submits its opposition to Plaintiff Transpersonnel, Inc.'s Motion for Summary Judgment ("Plaintiff's Motion").

**I.**

**INTRODUCTION**

Plaintiff, Transpersonnel, Inc. ("Transpersonnel"), filed its Complaint on January 27, 2003, seeking a declaratory judgment that Roadway was an "employer" of Transpersonnel's employees under the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381-1453, and that Roadway is obligated under a written agreement with Transpersonnel ("the Agreement") to reimburse Transpersonnel for any withdrawal liability assessed under the MPPAA by the Local 705 International Brotherhood of Teamsters Pension Fund (the "Pension Fund"). Transpersonnel filed Plaintiff's Motion and supporting materials on December 22, 2003 seeking a determination (1) that Roadway is an MPPAA employer with respect to Transpersonnel's employees, and (2) that Roadway is contractually obligated to reimburse

Transpersonnel for its MPPAA withdrawal liability.[1] For the reasons set forth below, Transpersonnel's Motion for Summary Judgment must be denied.

First, whether Roadway is an "employer" under the MPPAA is an easy question under the definition adopted by the Seventh Circuit (and every other circuit to address the question). Under that definition, Transpersonnel is an employer and Roadway is not. Transpersonnel, however, ignores the Seventh Circuit's definition, relying instead on cases applying the definition of employer found in Title I of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et. seq. That definition does not apply under the MPPAA and is markedly different than the Seventh Circuit's MPPAA employer definition. Transpersonnel alternatively argues that Roadway is a MPPAA employer under common law principles. Courts, however, have uniformly rejected the use of common law to determine MPPAA employer status.

Second, the unambiguous terms of the Agreement show that Roadway was only obligated to reimburse Transpersonnel for benefits Transpersonnel paid to or on behalf of its employees pursuant to the collective bargaining agreement ("CBA") between Transpersonnel and the employees' union, Teamsters Local Union No. 705 ("Local 705"). Transpersonnel's withdrawal liability is simply not a benefit Transpersonnel paid to or on behalf of its employees pursuant to its CBA. Rather, it is a statutory mechanism designed to stop employers like Transpersonnel from shifting the burden of their pension fund withdrawals to others.

---

[1] In Transpersonnel's Statement of Undisputed Material Facts ("Transpersonnel's Statement"), Transpersonnel alleges that if its withdrawal liability is ultimately found to be $441,846.96, Roadway's share of that liability is $76,209.37. Transpersonnel's Statement, ¶ 40. Transpersonnel's complaint, however, does not request reimbursement and does not seek a declaration of the extent of Transpersonnel's own MPPAA withdrawal liability or the amount of Roadway's alleged reimbursable share of that liability. Moreover, Transpersonnel has not yet been adjudged liable for any amount under the MPPAA. Thus, any contention with regard to the specific amount of Roadway's alleged liability is premature and wholly immaterial to the present action.

## II.

## FACTUAL BACKGROUND

On May 2, 1986, Roadway entered into the Agreement with Transpersonnel pursuant to which Roadway agreed to lease employees of Transpersonnel for use as drivers in connection with Roadway's operation as a motor carrier. Complaint, ¶ 9; Agreement, (attached as Exhibit 1 to Complaint). Transpersonnel, as the employer of the leased drivers, had executed successive CBAs with Local 705, obligating Transpersonnel to make contributions to the Pension Fund on the employees' behalf. Defendant's Statement of Material Facts ("Defendant's Statement"), ¶ 2. Transpersonnel was obligated under the Agreement to make contributions to the Pension Fund consistent with its obligations under the CBAs. Agreement, ¶ 4. Roadway was not a signatory to any CBA with respect to Transpersonnel's employees and was not obligated to pay any contributions to the Pension Fund with respect to Transpersonnel's employees. Defendant's Statement, ¶ 4.

The Agreement was a "cost-plus" contract, under which Roadway would pay Transpersonnel a fee for leasing its employees, plus the amount of the employees' wages, "in addition to such payroll costs as Unemployment Compensation Taxes, Social Security Taxes, Workers Compensation, Liability and Bonding Premium payments." Agreement, Schedule A, ¶ B; Defendant's Statement, ¶ 5. In addition, Roadway was obligated to:

> reimburse [Transpersonnel], at cost, for all applicable employee benefits, including . . . pension fund contributions, and other similar items paid to or on behalf of [Transpersonnel's] employees as a result of a union agreement obligation, including benefits furnished, paid, or accruing to or for the account of such employees as a result of any statute, regulation or rule related to such agreement, benefit or payment.

Agreement, Schedule A, ¶ C, Defendant's Statement, ¶ 6.

Roadway exercised its right to terminate the Agreement in 1992. Complaint, ¶ 15. On

July 1, 2002, the Pension Fund served Transpersonnel with notices and demands for partial withdrawal liability under the MPPAA for the years 1995, 1997 and 1998. Complaint, ¶ 18; Defendant's Statement, ¶ 7. The Pension Fund has never claimed that Roadway bears any withdrawal liability under the MPPAA or that Roadway is somehow responsible for Transpersonnel's MPPAA withdrawal liability. Complaint, ¶ 20; Defendant's Statement, ¶ 8.

## III.

## ARGUMENT

### A.

### Roadway is not a MPPAA Employer

In Count I of the Complaint, Transpersonnel claims that Roadway is an employer under the MPPAA. As noted in Section III.A.1., Transpersonnel is clearly an employer under the Seventh Circuit's MPPAA employer definition, and Roadway is not. Transpersonnel tries to evade this reality by conflating cases employing the definition of "employer" from Title I of ERISA and those applying common law principles. As Roadway explains in Sections III.A.2. through III.A.5., none of this has any bearing on whether Roadway is a MPPAA employer under the Seventh Circuit's definition.

#### 1.

#### Definition of "Employer" Under the MPPAA

Transpersonnel acknowledges in its Memorandum that the MPPAA does not define the term "employer" and that the Seventh Circuit adopted its own definition of the term in Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 85 F.3d 1282, 1287 (7th Cir. 1996). In Central Transport, the Seventh Circuit adopted the definition used by other circuits, which define a MPPAA employer as "'a person who is obligated to contribute to a

plan either as a direct employer or in the interest of an employer of the plan's participants.'" Id. (quoting Seaway Port Auth. v. Duluth-Superior ILA Marine Assn. Restated Pension Plan, 920 F.2d 503, 507 (8th Cir. 1990)). See also Mary Helen Coal Corp. v. Hudson, 235 F.3d 207, 212 (4th Cir. 2000); Carriers Container Council, Inc. v. Mobile Steamship Assn., 896 F.2d. 1330, 1343 (11th Cir. 1990); Korea Shipping Corp. v. New York Shipping Assn., 880 F.2d 1531, 1537 (2nd Cir. 1989). The Seventh Circuit particularly stated that where, as here, one party leases the services of another party's employees, the lessee is an employer if it is obligated to contribute to a pension plan with respect to the employees as a signatory to a contract creating the contribution obligation. Central Transport, 85 F.3d at 1287 (citing Rheem Manuf. Co. v. Central States Southeast and Southwest Areas Pension Fund, 63 F.3d 703, 707 (8th Cir. 1995)).

Under the Seventh Circuit's MPPAA employer definition, Transpersonnel is an employer and Roadway is not. The only party obligated to make contributions to the Pension Fund on behalf of Transpersonnel's employees was Transpersonnel. The Agreement expressly provided that Transpersonnel would "provide any of the benefits required by an applicable collective bargaining agreement . . . ." Agreement, ¶ 4; Defendant's Statement, ¶ 3. Transpersonnel was required under its CBA with Local 705 to make contributions to the Pension Fund on its employees' behalf. Defendant's Statement, ¶ 2. Transpersonnel is accordingly an MPPAA "employer" under the Seventh Circuit's definition.

Roadway, on the other hand, was not obligated under the Agreement to contribute to the Pension Fund. Nor was Roadway a signatory to the CBA between Transpersonnel and Local 705. Id., ¶ 4. Because Roadway had no obligation to contribute to the Pension Fund either under the Agreement or as a signatory to the CBA that created Transpersonnel's contribution obligation, Roadway was not an employer of Transpersonnel's employees under the MPPAA.

Transpersonnel seeks to evade this reality by simply ignoring the Seventh Circuit's MPPAA employer definition. That definition, however, is the only principle applicable in this case, and Transpersonnel's arguments must be rejected.

**2.**

**Transpersonnel's "Joint Employment" Argument is based on the wrong definition of "Employer"under the MPPAA**

Transpersonnel immediately parts ways with the Seventh Circuit's MPPAA employer definition in Section I.A. of its Memorandum where it argues that Roadway was a joint employer of Transpersonnel's employees. Transpersonnel cites a 1985 case from the Eastern District of Pennsylvania, Central Pennsylvania Teamsters Pension Fund v. Service Group, Inc., 645 F.Supp. 1996 (E.D. Pa. 1985) for the proposition that more than one entity may be an employer under the MPPAA. Although that case found two entities to be employers under the MPPAA, it did so using the definition of employer set out in Title I of ERISA, see id. at 997 (citing 29 U.S.C. § 1002(5)). That definition does not apply under the MPPAA, and Transpersonnel's reliance on the Central Pennsylvania case is misplaced.

The definition of "employer" found in Title I of ERISA applies only "for purposes of this Title: . . .." 29 U.S.C. § 1002 (emphasis supplied). The MPPAA, however, is found in Title IV of the statute. The U.S. Supreme Court concluded in Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 370 n.4 (1980), that the ERISA Title I definition of employer is limited to Title I and does not apply elsewhere of its own force. The Seventh Circuit, and every other circuit to address the issue, has acknowledged this and has adopted the Central Transport "contributing obligor" definition set forth above in Section III.A.1. to determine whether an entity is an employer under the MPPAA. See Central Transport, 85 F.3d at 1287. See also Mary Helen Coal Corp., 235 F.3d at 212; Rheem, 63 F.3d at 707; Seaway Port Authority, 920 F.2d at

507; Carriers Container Council, 896 F.2d at 1343; Korea Shipping Corp., 880 F.2d at 1537.

Transpersonnel does not cite, and Roadway is unaware of, any Seventh Circuit decision sanctioning the notion of joint employer status under the MPPAA. To the extent two entities could jointly qualify as employers under the MPPAA in the Seventh Circuit, both would have to fit within the Seventh Circuit's MPPAA employer definition. There is no question that Transpersonnel is an employer under the Seventh Circuit's MPPAA definition as a contributing obligor. Transpersonnel makes no effort, however, to qualify Roadway as an employer under that standard. Instead, Transpersonnel claims that Roadway was the joint employer of Transpersonnel's employees under the factors set out in Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking, Inc., 176 F.3d 1004, 1008 (7th Cir. 1999). That case, dealing with labor law principles under the National Labor Relations Act, has no application here whatsoever.

Barry Trucking is not a MPPAA case and has nothing to do with whether entities may be joint employers under the MPPAA. The common law employment relationship factors set out in Barry focus on the putative employer's control over the employees, see 176 F.3d at 1008, and are therefore irrelevant to the inquiry mandated by the Seventh Circuit's MPPAA employer definition. It is no wonder, then, that "[t]he circuits that have addressed the definition of employer under ERISA and the MPPAA . . . have uniformly rejected the use of state common law." Seaway Port Auth., 920 F.2d 503 at 506 n.3 (citing Philippines, Micronesia and Orient Navig. Co. v. NYSA-ILA Pension Trust Fund, 909 F.2d 39, 41 (2nd Cir. 1990); Carriers Container Council, 896 F.2d at 1343; Connors v. P&M Coal Co., 801 F.2d 1373, 1377 (D.C. Cir. 1986)). Transpersonnel's reliance on Barry Trucking is misplaced, and Transpersonnel's definition argument must also be rejected.

### 3.

### Transpersonnel's Argument That Roadway Was Contractually Obligated to Contribute to the Pension Fund Also Fails to Apply the Seventh Circuit's MPPAA Employer Definition and Must be Rejected

Transpersonnel continues to ignore the Seventh Circuit's MPPAA employer definition in Section I.B. of its Memorandum, where Transpersonnel argues that Roadway is an employer under the 1985 pre-Central Transport case of American Stevedoring Corp. v. Burlington Indust., Inc., 1985 WL 5057 (N.D. Ill. 1985). That case, as the Central Pennsylvania case from the preceding section, applied ERISA's Title I definition of employer in a MPPAA case and is therefore also invalid. See id. at *1 ("This Court sees no reason not to apply what is obviously the most relevant definition of employer and therefore takes § 1002(5) [of ERISA] as setting forth the proper definition.").

Transpersonnel contends that the analysis used by the Court in American Stevedoring remains viable because the definition of employer from Title I of ERISA is consistent with the definition of employer under the MPPAA adopted by the Seventh Circuit in Central Transport. This is not correct. Under Title I of ERISA, an employer is:

> Any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

29 U.S.C. § 1002(5). As noted above, however, the Seventh Circuit has adopted a definition of employer under the MPPAA that is limited only to those entities who are obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plans' participants. See Central Transport, 85 F.3d at 1287.[2]

---

[2] The circuits have adopted the "contributing obligor" definition described in Central Transport because that definition comports with the history and purposes of the MPPAA. "Congress enacted ERISA in 1974 to 'ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by determination of pension plans before sufficient funds have been accumulated in the plans.'" Seaway, 920 F.2d 503 (quoting Pension

Transpersonnel also misrepresents American Stevedoring. In that case, American Stevedoring Corporation ("ASC") leased its employees to Burlington Industries ("Burlington"). ASC, as Transpersonnel here, was obligated by its CBA to make payments to the pension fund on behalf of its employees. Burlington, on the other hand, like Roadway here, was obligated to reimburse ASC for payment ASC made to the pension fund on behalf of ASC's employees leased by Burlington. Transpersonnel states that the district court in American Stevedoring essentially concluded that Burlington's obligation to reimburse ASC for ASC's own pension fund contributions represented Burlington's own obligation to contribute to the pension fund. This was not the case. Although the court found both ASC and Burlington to be employers under the ERISA (and not the MPPAA) definition of employer, the court specifically concluded that Burlington's reimbursement obligation was only an example of "acting indirectly in the interest of an employer in relation to an employee benefit plan." See 1985 WL 5057 at *1 (quoting 29 U.S. C. § 1002(5)). The court did not in any way state or conclude that Burlington's obligation to reimburse ASC for its own pension fund contributions amounted to an independent obligation to contribute to the pension fund, something that is required under the Seventh Circuit's "contributing obligor" definition of an employer under the MPPAA.

**4.**

**Transpersonnel's Combination of Two Invalid Arguments adds up to Nothing**

Transpersonnel takes the two invalid arguments made at Sections I.A. and I.B. of its

---

Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 720 (1984)). Congress then created the Pension Benefit Guaranty Corporation ("PBGC") to ensure pension plans provide benefits to underfunded plans upon their termination. Id. The PBGC, however, subsequently determined that ERISA did not adequately protect pension plans from withdrawals of employers from multiemployer plans. Id. Congress accordingly amended ERISA by enacting the MPPAA, which establishes withdrawal liability for employers, like Transpersonnel, that cease participating in multiemployer pension plans. Id. The purpose of the MPPAA was therefore to discourage employers from evading their obligations to pension plans by withdrawing and thus to reduce the burden on plans in the aftermath of an employer's withdrawal. See Mary Helen Coal Corp., 235 F.3d at 212; Korea Shipping, 880 F.2d at 1537. The circuit courts have accordingly concluded that an employer is a person obligated to contribute to a pension plan.

Memorandum and combines them in Section I.C., arguing that Roadway meets the Seventh Circuit's definition of a MPPAA employer because (1) Roadway was a joint employer of Transpersonnel's employees, and (2) Roadway was contractually obligated to make contributions to the Pension Fund. Transpersonnel's aggregation of these two failing arguments cannot make Roadway an employer under the MPPAA.

The only additional claim Transpersonnel makes in Section I.C. is that it was merely the cash conduit for Roadway's obligatory contributions to the Pension Fund and that Roadway may not be insulated from employer status under the MPPAA by virtue of its Agreement with Transpersonnel. Transpersonnel was not, however, a cash conduit for Roadway's contributions to the Pension Fund. Roadway had no obligation whatsoever to contribute to the Pension Fund. See Defendant's Statement, ¶ 4. The only party with any obligation to contribute to the Pension Fund was Transpersonnel. See id., ¶¶ 2, 3. Roadway's only obligation was to reimburse Transpersonnel for Pension Fund contributions Transpersonnel was obligated to make as a result of Transpersonnel's CBA with the Local 705. See id., ¶ 6. Transpersonnel's characterization of its role under the Agreement as "an intermediary to collect contributions to the Pension Plan from Roadway," Transpersonnel's Memorandum at 8, is not supported by any facts.

The case Transpersonnel cites in its efforts to cast itself as Roadway's cash conduit, Korea Shipping, does not support Transpersonnel's argument. In Korea Shipping, the International Longshoreman's Association (a union) and the New York Shipping Association ("NYSA") (an association of carriers and stevedoring companies) negotiated certain CBAs. 880 F.2d at 1534. The carriers expressly agreed to make contributions to a pension fund for the union's members. Id. at 1535. The CBAs in that case called for the carriers to pay the contributions to the NYSA, which would transmit the contributions to the pension fund.

The carriers in Korea Shipping subsequently filed declaratory judgment actions against the pension fund seeking rulings that the carriers were not employers subject to MPPAA withdrawal liability. The Second Circuit concluded that the fact the NYSA was the party that transferred the carriers' contributions to the pension fund was irrelevant because the money was paid directly by the carriers under their agreement "for the express purpose of funding the . . . pension plan." 880 F.2d at 1539. As the Second Circuit correctly recognized, "though the NYSA made the contributions to the Fund, it received the funds directly from the carriers that had obligated themselves contractually to make the payments. The agreement places the obligation for funding the longshoreman's fringe benefits squarely upon the carriers' shoulders." Id. at 1535 (emphasis added). In other words, the carriers themselves were contractually obligated to contribute to the pension fund in that case (and not the NYSA), and the fact that the carriers passed their contractually obligated contributions through an intermediary (i.e., the NYSA) did not mean that the carriers were not employers under the MPPAA.

The present case is fundamentally different than the Korea Shipping case in that here, unlike in Korea Shipping, Roadway had no contractual obligation to contribute to the Pension Fund. Only Transpersonnel was so obligated. Roadway's only obligation was to reimburse Transpersonnel for Transpersonnel's own Pension Fund contributions after the contributions had been made. Roadway had no independent obligation to make contributions on its own behalf to the Pension Fund for the Transpersonnel employees. Korea Shipping is inapposite, and Transpersonnel's argument must be rejected.

**5.**

**Transpersonnel's Alternative Common Law Argument Has Been Universally Rejected and Should be Rejected Here**

Transpersonnel alternatively argues, at Section I.D. of its Memorandum, that Roadway is

an employer of Transpersonnel's employees under the MPPAA pursuant to common law principles. As noted above, however, the circuits that have addressed the definition of employer under the MPPAA have rejected the use of state common law to determine employer status. See Seaway Port Auth., 920 F.2d at 506 n.3 (citing Philippines, Micronesia and Orient Navig. Co. v. NYSA-ILA Pension Trust Fund, 909 F.2d 39, 41 (2nd Cir. 1990); Carriers Container Council, 896 F.2d at 1343; Connors v. P&M Coal Co., 801 F.2d 1373, 1377 (D.C. Cir. 1986)). See also Rheem, 63 F.3d at 705, 707 (holding that lessee of employees was not a MPPAA employer despite performing functions traditionally done by an employer because the lessee had no contractual obligation to the pension fund). The only test applicable to determine whether Roadway was an employer under the MPPAA is the test set forth by the Seventh Circuit in Central Transport. Again, Transpersonnel is an MPPAA employer under that test, and Roadway is not. Transpersonnel's common law argument must therefore be rejected.

**B.**

**The Unambiguous Terms of the Agreement Show that Roadway has No Contractual Obligation to Reimburse Transpersonnel for Transpersonnel's Own Withdrawal Liability**

In Count II of the Complaint, Transpersonnel claims that, Roadway is required under the Agreement to indemnify Transpersonnel for a pro-rata share of Transpersonnel's withdrawal liability relating to the drivers Transpersonnel leased to Roadway. Transpersonnel misconstrues the Agreement in making its argument.

When interpreting a contract, the court must give the unambiguous terms of the agreement their plain and ordinary meaning. See Spearman Indus., Inc. v. St. Paul Fire and Marine Ins. Co., 109 F.Supp.2d 905, 906 (N.D. Ill. 2000) (applying Illinois law). The court may neither read terms into the language that are not expressly stated nor ignore terms that are explicitly written therein. See GNB Battery Tech., Inc. v. Gould, 65 F.3d 615, 622 (7th Cir.

1995). In particular, while contracts of indemnity are generally valid, they will be strictly construed against the putative indemnitee, and courts will not read indemnity provisions into contracts when it is clear from the language of the agreement that no indemnity obligation was intended. Marmon Group, Inc. v. Rexnord, Inc., 822 F.2d 31, 34 (7th Cir. 1987).

Transpersonnel's indemnity claim is unsupported by the unambiguous language of the Agreement. As noted above, Transpersonnel was expressly obligated under the Agreement to "provide any of the benefits required by an applicable bargaining agreement . . . ." Agreement, ¶ 4. Pursuant to its CBA with Local 705, Transpersonnel was required to make contributions to the Pension Fund on its employees' behalf. Defendant's Statement, ¶ 2. Under Paragraph C of Schedule A to the Agreement, Roadway agreed to

> reimburse [Transpersonnel], at cost, for all applicable employee benefits, including . . . pension fund contributions, and other similar items paid to or on behalf of [Transpersonnel's] employees as a result of a union agreement obligation, including benefits furnished, paid, or accruing to or for the account of such employees as a result of any statute, regulation or rule related to such agreement, benefit or payment.

This paragraph expressly provides that Roadway would reimburse Transpersonnel only for the cost of Pension Fund contributions made by Transpersonnel for Transpersonnel's employees pursuant to Transpersonnel's own obligation under its CBA with its employees.

Schedule A made the Agreement a "cost-plus" contract, under which Roadway would pay Transpersonnel a fee for leasing its employees, plus the amount of the employees' wages, "in addition to such payroll costs as Unemployment Compensation Taxes, Social Security Taxes, Workers Compensation, Liability and Bonding Premium payments."[3] Agreement, Schedule A, ¶B; Defendant's Statement, ¶ 5. Paragraph C of Schedule A simply added employee benefits,

[3] Thus, the survival provision in Schedule A only confirmed that Roadway would reimburse Transpersonnel for benefits paid to or on behalf of Transpersonnel's employees for work done for Roadway by Transpersonnel's employees while the Agreement was in force, even if the benefits were paid after the Agreement was terminated.

including pension fund contributions paid by Transpersonnel to or on behalf of its employees as a result of Transpersonnel's CBA obligations, to the list of reimbursable items.

Transpersonnel's MPPAA withdrawal liability is simply not a benefit or Pension Fund contribution paid to or on behalf of Transpersonnel's employees as a result of Transpersonnel's obligations under its CBA. Rather, as noted above, withdrawal liability under the MPPAA is a purely statutory mechanism designed to avoid shifting financial burdens to other employers or to the PBGC, when an employer, such as Transpersonnel, withdraws from a multiemployer pension plan. See Progressive Driver Services, 940 F. Supp. at 1312. There is nothing whatsoever in the provision indicating that Roadway is in any way obligated to reimburse Transpersonnel for Transpersonnel's own withdrawal liability under the MPPAA, and the Court may not alter the terms of the parties' agreement to add the indemnity provision Transpersonnel now seeks. See Marmon Group, Inc., 822 F.2d at 34.

Moreover, while the provision explains that the class of reimbursable items includes "benefits furnished, paid, or accruing to or for the account of such employees as a result of any statute, regulation or rule related to such agreement, benefit or payment," this adds nothing to Roadway's reimbursement obligation. The provision only states that the class of potentially reimbursable items includes these enumerated benefits. The class of potentially reimbursable items, as noted above, is defined to include only those benefits, pension fund contributions or other items "paid to or on behalf of Transpersonnel's employees" by Transpersonnel pursuant to Transpersonnel's own obligation under the CBA between Transpersonnel and Local 705.

Thus, because "benefits furnished, paid, or accruing to or for the account of such employees as a result of any statute, regulation or rule related to such agreement, benefit or payment" are only a subset of the class of otherwise reimbursable items, items within the subset

would only be reimbursable by Roadway if they were items "paid to or on behalf of Transpersonnel's employees" by Transpersonnel pursuant to Transpersonnel's own obligation under the CBA between Transpersonnel and Local 705. Again, however, Transpersonnel's own withdrawal liability is simply not a benefit or Pension Fund contribution paid to or on behalf of Transpersonnel's employees as a result of Transpersonnel's obligations under its CBA. Rather, Transpersonnel's withdrawal liability is a statutory mechanism designed to avoid shifting the financial burden of Transpersonnel's withdrawal to other participating employers or the PBGC.

The interpretation of the terms of an unambiguous contract is a question of law particularly suited to disposition on summary judgment. Kallman v. Radio Shack Corp., 315 F.3d. 731, 735 (7th Cir. 2002). The unambiguous terms of the Agreement establish as a matter of law that Roadway has no obligation to reimburse Transpersonnel for Transpersonnel's own MPPAA withdrawal liability. Further, any ambiguities would have to be construed against Transpersonnel as the putative indemnitee. See Marmon Group, Inc., 822 F.2d at 34. Transpersonnel is accordingly not entitled to summary judgment on Count II of the Complaint.

## III.

## CONCLUSION

Transpersonnel is not entitled to summary judgment on its claims (1) that Roadway is an MPPAA employer with respect to Transpersonnel's employees and (2) that Roadway is contractually obligated to reimburse Transpersonnel for its MPPAA withdrawal liability. While Transpersonnel is a MPPAA "employer" of its employees under the Seventh Circuit's definition (the only standard applicable here), Roadway is not. Moreover, the unambiguous terms of the Agreement show that Roadway is not obligated to reimburse Transpersonnel for its own MPPAA withdrawal liability.

Respectfully submitted,

James H. Hanson
R. Jay Taylor, Jr.
William D. Brejcha

Attorneys for Defendant,
Roadway Express, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon the following by depositing the same in the United States Mail, First Class, postage prepaid on this 14th day of January, 2004:

Mark A. Spognardi
Phillip M. Schreiber
HOLLAND & KNIGHT
500 W. Madison Street, 40th Floor
Chicago, IL 60661

James H. Hanson

James H. Hanson
R. Jay Taylor, Jr.
SCOPELITIS GARVIN LIGHT & HANSON
10 W. Market Street, Suite 1500
Indianapolis, IN 46204
Telephone: (317) 637-1777
Telefax: (317) 687-2414
e-mail: jhanson@scopelitis.com
e-mail: jtaylor@scopelitis.com

William D. Brejcha
SCOPELITIS GARVIN LIGHT & HANSON
30 W. Monroe, Suite 600
Chicago, IL 60603
Telephone: (312) 422-1200
Telefax: (312) 422-1224
e-mail: bbrejcha@scopeltis.com

FILED
JAN 1 5 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TRANSPERSONNEL, INC., an Illinois corporation,

Plaintiff,

v.

ROADWAY EXPRESS, INC., a Delaware corporation,

Defendant.

No. 03 C 00611

Judge Amy St. Eve

DOCKETED
JAN 1 6 2004

**NOTICE OF FILING**

TO: Mark A. Spongnardi
Phillip M. Schreiber
HOLLAND & KNIGHT
500 W. Madison Street, 40th Floor
Chicago, IL 60661

**PLEASE TAKE NOTICE,** that on this 14th day of January, 2004, we caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, at 219 South Dearborn Street, Chicago, Illinois, **Defendant's Response to Plaintiff Transpersonnel, Inc.'s Statement of Undisputed Material Facts and Statement of Additional Undisputed Material Facts; and Opposition of Defendant, Roadway Express, Inc., to Plaintiff Transpersonnel, Inc.'s Motion for Summary Judgment**, copies of which are served upon you..

James H. Hanson
One of Defendant's Attorneys

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies he caused to be served copies of the foregoing **Defendant's Response to Plaintiff Transpersonnel, Inc.'s Statement of Undisputed Material Facts and Statement of Additional Undisputed Material Facts; and Opposition of Defendant, Roadway Express, Inc., to Plaintiff Transpersonnel, Inc.'s Motion for Summary Judgment**, to all parties of record at their address via United States First Class Mail on the 14th day of January, 2004.

James H. Hanson

James H. Hanson
R. Jay Taylor, Jr.
SCOPELITIS GARVIN LIGHT & HANSON
10 W. Market Street, Suite 1500
Indianapolis, IN 46204
Telephone: (317) 637-1777
Telefax: (317) 687-2414
e-mail: jhanson@scopelitis.com
e-mail: jtaylor@scopelitis.com

William D. Brejcha
SCOPELITIS GARVIN LIGHT & HANSON
30 W. Monroe, Suite 600
Chicago, IL 60603
Telephone: (312) 422-1200
Telefax: (312) 422-1224
e-mail: bbrejcha@scopeltis.com

H:\Users\DKOPACH\RJT\Roadway\Transpersonnel #10420.26\pleadings\Notice of Filing 01-14-04.doc