# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 611 | **DATE** | 4/21/2004 |
| **CASE TITLE** | Transpersonnel, Inc. vs. Roadway Express, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Transpersonnel's motion for summary judgment is granted as to Count I and denied as to Count II. Count II is dismissed as moot. Roadway's motion for summary judgment is denied as to Counts I and II. Status hearing set for 5/4/04 is stricken. Any other pending dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | APR 22 2004 date docketed | 33 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | JXM docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TH✓ | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRANSPERSONNEL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 0611 |
| v. ) | |
| ) | |
| ROADWAY EXPRESS, INC., ) | |
| ) | |
| Defendant. ) | |

DOCKETED APR 2 2 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Transpersonnel, Inc. ("Transpersonnel") filed a two-count complaint against Roadway Express, Inc. ("Roadway"). In Count I, Transpersonnel seeks a declaratory judgment that Roadway is an "employer" under the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1381-1453. In the alternative, in Count II, Transpersonnel seeks a declaratory judgment that Roadway is obligated under a written agreement with Transpersonnel to reimburse Transpersonnel for any withdrawal liability relating to the Local 705 International Brotherhood of Teamsters Pension Fund ("Pension Fund").

The parties filed cross motions for summary judgment on both counts. For the reasons stated herein, summary judgment is granted as to Count I in favor of Transpersonnel. Given that Transpersonnel seeks the relief in Count II as an alternative, the Court need not reach Count II. Accordingly, Count II is dimissed without prejudice as moot.

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

On cross motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. *Proviso Ass'n of Retarded Citizens v. Village of Westchester*, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996). Thus, the traditional standards for summary judgment still apply even though both parties have moved for summary judgment. *Blum v. Fisher and Fisher, Attorneys at Law*, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997). The Court considers the merits of each cross motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration. *Chicago Truck Drivers,*

*Helpers and Warehouse Workers Union (Ind.) Pension Fund v. Kelly*, No. 95 C 0501, 1996 WL 507258, at *3 (N.D. Ill. Sept. 4, 1996).

## BACKGROUND

On May 2, 1986, Roadway and Transpersonnel entered into a written agreement ("Agreement") pursuant to which Transpersonnel agreed to lease truck drivers to Roadway for Roadway to use in its operations as a common carrier. (R. 18-1, Pl.'s Rule 56.1 Statement ¶ 9; R. 26-1, Def.'s Rule 56.1 Response ¶ 9; R. 20-1, Def.'s Rule 56.1 Statement ¶ 1; R. 28-1, Pl.'s Rule 56.1 Response ¶ 1.) Transpersonnel executed successive collective bargaining agreements ("CBAs") with the leased drivers' union, the International Brotherhood of Teamsters, Chauffers, Warehousemen, and Helpers of America ("Union"). (R. 20-1, Def.'s Rule 56.1 Statement ¶ 2; R. 28-1, Pl.'s Rule 56.1 Response ¶ 2.) The CBAs obligated Transpersonnel to make contributions to the Pension Fund. (*Id.* ¶ 3.) Roadway did not sign the CBAs. (*Id.* ¶ 4.)

The Agreement required Roadway to reimburse Transpersonnel for the contributions that Transpersonnel made to the Pension Fund. (R. 18-1, Pl.'s Rule 56.1 Statement ¶ 15; R. 26-1, Def.'s Rule 56.1 Response ¶ 15.) Schedule A of the Agreement provides in part:

> *[Roadway] agrees to reimburse [Transpersonnel], at cost, for* all applicable employee benefits, including health, welfare and *pension fund contributions*, and other similar items paid to or on behalf of [Transpersonnel's] employees as a result of a union agreement obligation, including benefits furnished, paid, or accruing of any statute, regulation or rule related to such agreement, benefit or payment. [Roadway] agrees that [Transpersonnel's] right to payment for the amounts specified survives any cancellation of the main agreement.

(*Id.* ¶ 15) (emphasis added.)

If Roadway became displeased with a particular leased driver, Roadway had the authority

to instruct Transpersonnel not to send that driver back to Roadway. (*Id.* ¶ 34.) Further, Roadway had authority to dispatch the leased drivers, direct the loading and unloading of vehicles, set the drivers' routes, and direct the drivers as to pick-ups, deliveries, and other matters related to the drivers' day-to-day operations. (*Id.* ¶ 11.)

Roadway terminated the Agreement in 1992, and Transpersonnel thereafter stopped making contributions to the Pension Fund on behalf of the leased drivers. (*Id.* ¶ 36.) On July 1, 2002, the Pension Fund issued a Notice and Demand on Transpersonnel for partial withdrawal liability under the MPPAA for the years 1995, 1997, and 1998, totaling $441,846.96.[1] (R. 18-1, Pl.'s Rule 56.1 Statement ¶ 38; R. 26-1, Def.'s Rule 56.1 Response ¶ 38; R. 20-1, Def.'s Rule 56.1 Statement ¶ 7; R. 28-1, Pl.'s Rule 56.1 Response ¶ 7.) The Pension Fund requested Transpersonnel to make interim payments on this liability, and Transpersonnel requested review of the Pension Fund's Notice and Demand. (Compl. ¶¶ 18-19.) Transpersonnel filed a demand for arbitration on the issue of the amount of its withdrawal liability. (*Id.* ¶ 21.) The Pension Fund has not pursued Roadway for withdrawal liability. (R. 18-1, Pl.'s Rule 56.1 Statement ¶ 39; R. 26-1, Def.'s Rule 56.1 Response ¶ 39; R. 20-1, Def.'s Rule 56.1 Statement ¶ 8; R. 28-1, Pl.'s Rule 56.1 Response ¶ 8.)

## ANALYSIS

### I. The MPPAA Statutory Framework

Under the MPPAA, "[i]f an employer withdraws from a multi-employer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount

---

[1] The Pension Fund calculated this preliminary withdrawal liability amount. Transpersonnel filed for arbitration of this issue pursuant to the MPPAA. The arbitrator will determine the precise amount, if any, of Transpersonnel's withdrawal liability.

4

determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a). "The primary purpose of the legislation is to protect retirees and workers who are participants in such [multi-employer pension] plans against the loss of their pensions. The Act is designated to foster plan continuation and growth because plan continuation and growth provide participants and beneficiaries [with the] greatest security against benefit loss." H. Rep. 869, 96[th] Cong., 2d Sess., 51 (1980) *reprinted in* 1980 U.S.C.C.A.N. 2918, 2919.

The MPPAA requires that "[a]ny dispute between an employer and the plan sponsor of a multi-employer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). A federal district court, however, can determine whether an entity is an "employer" under the MPPAA before arbitration of any remaining issue. *Banner Indus. v. Central States Pension Fund*, 875 F.2d 1285, 1293 (7th Cir. 1989). This exception to the MPPAA's arbitration requirement "allows a company to bypass arbitration for the limited purpose of determining whether it is an 'employer' within the meaning of section 1401(a)(1). . . . Since only an 'employer' is required to arbitrate, the district court may address this threshold question before arbitration." *Mason & Dixon Tank Lines, Inc. v. Central States Pension Fund*, 852 F.2d 156, 1167 (6th Cir. 1988).

## II. Count I: Roadway Is An "Employer" Under The MPPAA

At issue in this case is whether Roadway is an "employer" for purposes of the MPPAA, and whether there can be multiple "employers" under the MPPAA with respect to the same employees. The Court finds that both Roadway and Transpersonnel are "employers."

The Seventh Circuit has defined an "employer" for purposes of the MPPAA as "a person

5

who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.*, 85 F.3d 1282, 1287 (7th Cir. 1996); *see also Rheem Mfg. Co. v. Central States Southeast and Southwest Areas Pension Fund*, 63 F.3d 703, 706 (8th Cir. 1995); *Korea Shipping Corp. v. NYSA–Int'l Longshoremen's Ass'n Pension Trust Fund*, 880 F.2d 1531, 1537 (2nd Cir. 1989). Under this definition, "the appropriate inquiry is whether the alleged employer had an obligation to contribute as well as the nature of that obligation." *Central Transp.*, 85 F.3d at 1287.

Roadway contends that it is not an "employer" because it had no obligation to contribute to the Pension Fund. Specifically, Roadway points out that it did not sign the CBAs and argues that Transpersonnel—the sole party to sign the CBAs—is accordingly the sole "employer" under the MPPAA with respect to the leased drivers.

Transpersonnel argues that the MPPAA allows for joint "employers." Transpersonnel contends that Roadway incorrectly assumes that there can be only one "employer" under the MPPAA and that the only means by which an entity could be an MPPAA "employer" is if the entity were contractually obligated to contribute directly to a pension fund rather than through another entity.

The Seventh Circuit has not directly addressed the question of whether more than one entity may qualify as an "employer" under the MPPAA.[2] Courts in this district and other

---

[2] The Seventh Circuit acknowledged in *Central Transport* that a party who signs a CBA creating the obligation to contribute to a pension fund is an "employer" under the MPPAA. *Central Transp.*, 85 F.3d at 1287. The Court did not address, however, whether a lessee may *also* be considered to be an employer, because that question was not before the Court.

6

jurisdictions have held that both the lessor and lessee of employees may be "employers" under the MPPAA where the lessor contracts with the union and makes direct contributions to the pension fund and the lessee is obligated to reimburse the lessor for those pension fund contributions. These courts have reasoned that the lessee is the true source of the funds that are paid into the pension plan, and the fact that the lessor acts as a conduit for the money does not insulate the lessee from withdrawal liability. While the following cases are not binding on the Court, the Court finds their reasoning persuasive.

In *American Stevedoring Corp. v. Burlington Indus., Inc.*, No. 85 C 4180, 1985 WL 5057 (N.D. Ill. Dec. 19, 1985), the Court determined that two companies, a lessor and lessee, were both "employers" for MPPAA purposes. American Stevedoring Corp. ("ASC") leased truck drivers to Burlington and was the sole signatory to the CBA with the leased drivers' union. The CBA obligated ASC to make payments to the union's pension fund. A separate contract between ASC and Burlington obligated Burlington, the lessee, to reimburse ASC, the lessor, for the payments that ASC made to the pension fund on behalf of the leased drivers. The Court ruled that ASC was a classic MPPAA "employer" because the CBA obligated ASC to make payments to the pension fund. The Court further ruled that Burlington also was an "employer" because it "was obligated to reimburse ASC for the payments ASC made to the Pension Fund on behalf of the employees Burlington 'leased.'" *Id.* at *1.

In *Central Pennsylvania Teamster's Pension Fund v. Service Group, Inc.*, 645 F. Supp. 996 (E.D. Pa. 1985), the Court held that two companies, a lessor and a lessee, were both "employers" for MPPAA purposes. Service Group, the lessor, was the sole signatory to a CBA with the drivers' union. The CBA obligated Service Group to make contributions to the union's

7

pension fund. Harley Davidson York, the lessee, was obligated to reimburse Service Group for the pension fund payments. The Court determined that "it would be manifestly unjust to one or the other of them to impose liability on just one party," and disagreed that "only one [party] can by an employer for the purpose of the determination of withdrawal liability." *Id.* at 998. The Court evaluated the objectives of the MPPAA and concluded that "the purpose of the MPPAA is best served by exposing all parties that are 'employers' to their legitimate withdrawal liability," and ordered the parties to arbitrate the issue of the amount of withdrawal liability. *Id.*

Finally, in *Schaffer v. Eagle Indus., Inc.*, 726 F. Supp. 113 (E.D. Pa. 1989), a case remarkably similar to this case, the Court determined that Eagle, a lessee, was an "employer" for MPPAA purposes where the lessee leased drivers from Transpersonnel and reimbursed Transpersonnel for the contributions that Transpersonnel made to the pension fund on behalf of the leased drivers.[3] The lessee argued that because it never had an obligation under a collective bargaining agreement to contribute to the Fund on behalf of the leased drivers and because it had no control over labor relations or negotiations with those workers, it was never an "employer" for purposes of the MPPAA. *Id.* at 116. The Court disagreed and concluded that the lessee was an "employer."[4]

---

[3] The agreement between Transpersonnel and Eagle obligating Eagle to reimburse Transpersonnel is very similar to the language in the Agreement in this case:
> Where applicable, Lessee also agrees to reimburse Lessor, at cost, for employees' Health, Welfare and Pension Fund Contributions to the local Teamsters or other union representing the employees, together with any other employee benefits paid to or on behalf of such employees as a result of a union agreement obligation.

*Id.* at 118 n.7.

[4] The administrator of the pension plan also sued Transpersonnel, the lessor, but Transpersonnel settled, leaving the Court to determine only whether the lessee was an

8

Roadway argues that these cases are irrelevant because the courts applied the definition of "employer" found in Title I of ERISA[5] rather than the "contributing obligor" definition of *Central Transport*. Although the cited cases are not dispositive, they nonetheless provide guidance. The Supreme Court has noted that although Title I definitions are not necessarily applicable to Title IV, they "may otherwise reflect the meaning of the terms defined as used in other Titles." *Nachman v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 371 n.14, 100 S. Ct. 1723, 1731 n.14 (1980). Moreover, the fact that the "contributing obligor" test is "drawn from Title I of ERISA" suggests that cases decided under the Title I definition are not irrelevant after *Central Transport*.[6] *Carriers Container Council, Inc. v. Mobile Steamship Ass'n–Int'l Longshoremen's Ass'n*, 896 F.2d 1330, 1343 (11th Cir. 1990).

In this case, the relevant facts are undisputed. Transpersonnel is the sole signatory to the CBAs. The CBAs obligate Transpersonnel to make contributions to the Pension Fund.

---

"employer" under the MPPAA.

[5] Title I defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5).

[6] The Court further notes that a Court in this district left open the question whether there could be multiple "employers" under the "contributing obligor" definition. In *Central States Southeast and Southwest Areas Pension Fund v. Progressive Driver Services, Inc.*, 940 F. Supp. 1311, 1315 (N.D. Ill. 1996), the Court determined that Progressive was an "employer" for MPPAA purposes under the *Central Transport* "contributing obligor" definition. Progressive argued that another company, Reynolds, was also an "employer" because Progressive leased drivers to Reynolds, and Reynolds was "ultimately responsible for . . . all contributions to the Pension Fund." *Id.* The Court left open the question whether the lessor Progressive and the lessee Reynolds were both "employers" under the MPPAA because "[w]hether the evidence proffered by Progressive demonstrates that Reynolds also had a contractual obligation to contribute (*i.e.*, as a joint employer) is irrelevant to the determination of whether Progressive was an employer for MPPAA purposes." *Id.*

Transpersonnel does not dispute that it is an "employer" under the MPPAA.[7] The Agreement between Transpersonnel and Roadway obligates Roadway to reimburse Transpersonnel for Pension Fund contributions that Transpersonnel made on behalf of the leased drivers. The Court finds that Roadway is an "employer" under the MPPAA because Roadway was contractually obligated to reimburse Transpersonnel for the Pension Fund contributions that Transpersonnel made on behalf of the leased drivers. Accordingly, summary judgment is granted in favor of Transpersonnel as to Count I, and Roadway's motion for summary judgment is denied as to Count I.

### III. Count II: The Court Need Not Interpret The Agreement In Light Of Its Ruling That Roadway Is An "Employer"

In Count II, Transpersonnel seeks a declaratory judgment that the Agreement obligates Roadway to reimburse Transpersonnel for any withdrawal liability that Transpersonnel might incur in connection with the leased drivers. Transpersonnel essentially asks the Court to opine as to whether the Agreement requires Roadway to reimburse Transpersonnel in the event that an arbitrator might someday rule that Transpersonnel is liable for withdrawal liability. This claim, however, is premature,[8] and will not ripen until the arbitrator determines whether a withdrawal has occurred and the amount, if any, of withdrawal liability. *American Stevedoring*, 1985 WL 5057 at *2.

---

[7] The Court agrees that Transpersonnel is an "employer" because it entered into the CBAs and the CBAs obligated it to make contributions to the Pension Fund.

[8] *See United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992) ("a declaratory judgment action to determine an insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not ripe for adjudication.") (citation omitted).

In any event, the Court need not address the merits of Count II because Transpersonnel brings it as an alternative basis to obtain the relief that it seeks, namely, to compel Roadway to participate in the arbitration proceedings. *Sethness-Greenleaf, Inc. v. Green River Corp.*, 89 C 9203, 1995 WL 127786, at *10 (N.D. Ill. Mar. 22, 1995). Further, counsel for Transpersonnel unequivocally represented to the Court on April 20, 2004 that if the Court granted summary judgment in Transpersonnel's favor on Count I, then the Court need not determine Count II. Accordingly, Count II is dismissed without prejudice as moot.

## CONCLUSION

The Court grants summary judgment in favor of Transpersonnel as to Count I and declares that Roadway is an "employer" for purposes of the MPPAA. Roadway's motion for summary judgment is denied as to Count I. Because Count II is an alternative, independent basis for the same relief, the Court dismisses Count II without prejudice as moot. This order closes the case because the Court has granted the full scope of requested relief in Count I and has dismissed Count II as moot.

Dated: April 21, 2004          ENTERED

AMY J. ST. EVE
United States District Court Judge